AUSA Kenneth R. Chadwell (313-226-9698)
Special Agent Jeffrey Jacobs (313-965-2323)

08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
### Eastern District of Michigan

United States of America
v.
TOMO DUHANAJ

Case: 2:12-mj-30488
Judge: Unassigned,
Filed: 08-03-2012 At 03:31 PM
CMP: Sealed Matter (jj)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 13, 2012 _____ in the county of _____ Oakland _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. section 1001 | defendant knowingly and willfully made materially false and fraudulent statements in a matter within the jurisdiction of the executive branch of the United States government |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Jeffrey Jacobs, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

_____
Judge's signature

Date: August 3, 2012

City and state: Detroit, Michigan

Hon. Laurie J. Michelson, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Jeffrey Jacobs, being duly sworn states:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have so employed since 2005. My duties include the investigation of various violations of federal criminal law, including making extortionate extensions of credit, financing extortionate extensions of credit, and collecting extensions of credit by extortionate means, commonly referred to as loan sharking.

2. The statements contained in this Affidavit are based in part on information provided by other FBI Special Agents, local law enforcement officers, witnesses, my observations and experience. I have not included all the facts known about the case, only those necessary to establish probable cause that TOMO DUHANAJ (a.k.a. TOM DUHANI) has violated of Title 18, United States Code, Section 1001 - making false material statements to federal agents.

3. A cooperating witness (CW) has been providing information concerning TOMO DUHANAJ for a number of months. This information is particularly reliable in that many of the statements made by CW are against CW's penal interests and tend to incriminate CW along with DUHANAJ. CW's has also been corroborated by other cooperating witnesses, surveillance, and statements and actions of TOMO DUHANAJ. CW has advised me and other FBI Special Agents that TOMO DUHANAJ makes high interest loans over 25% within the Albanian community in metropolitan Detroit. CW believed that these loans were extended with the threat of violence if they were not repaid. The CW stated that DUHANAJ was guaranteed repayment because the Albanian Community knew him as killer. According to CW, TOMO told him/her that no one yet had failed to repay him.

4. On May 30, 2012, DUHANAJ was pulled over in a traffic stop by the Troy Police Department. He was arrested for driving on a suspended license and his car was impounded. In a search of his person, two checks were found with the payee line left blank. These checks were from Enver Jusufi and John Goci. The amount of Jusufi's check was $1,375 and for Goci's check was

1

$2,700. DUHANAJ also possessed a sheet of paper with "Outstanding Payments, Tom Duhanaj" detailing a set of extensions of credit for February 2012, including loans to John Goci, Enver Jusufi (referred to as Ala on this sheet) and others. This sheet of paper was provided to the FBI by the Troy Police Department. An FBI Forensic Accountant reviewed the list and determined that many of the loans detailed on the sheet appear to be in excess of 45% interest per annum, including those made to Goci and Jusufi (a/k/a Ala). (See further analysis below.)

5. On July 13, 2012, I along with Special Agent Pejman Arab from Homeland Security Investigations, interviewed TOMO DUHANAJ at him home in Troy, Michigan. SA Arab introduced the agents as Federal Agents. TFO Arab then identified himself as a special agent with Homeland Security and me Jacobs as his partner. SA Jacobs also identified himself as a Special Agent. We did not specifically mention the FBI so as not to alert DUHANAJ to the FBI's interest in the matter although he was clearly informed that he was speaking to federal agents. At the time of the interview, DUHANAJ did not know that I and SA Arab had received and were aware of the contents of the list of loans discovered by the Troy Police Department on May 30, 2012.

6. When asked what he did for a living, DUHANAJ advised he owned a restaurant on Eight Mile Road in Ferndale called Capital Coney Island, which was in his wife's name, but was a family business. DUHANAJ stated that he, his wife, and son Agron work there. DUHANAJ falsely claimed that Capital Coney was his only source of income, and the entire family brought home about $800-$1,200 per week. According to Bank of America records, DUHANAJ maintains an account in the names TOMO DUHANAJ and PRENDE DUHANAJ, his wife. Records from this account were obtained and reviewed by the FBI for the period March 24, 2010 to April 23, 2012. During this period $2,580,809 was deposited into this account, which averages $101,208 per month. Most recently, from January 1, 2012 to April 23, 2012, a period of sixteen weeks, $109,990.76 was deposited into this account, which averages $6,874.42 per week. DUHANAJ's business, Eight Mile Capital Coney Island has a separate bank account with TCF Bank.

2

7. DUHANAJ was asked why at the time of his arrest by TPD, he had checks in his possession with the payee line left blank. DUHANAJ explained that he has a friend, RANDY, who gives out loans. DUHANAJ stated he asked RANDY to give his two friends, John Goci and Enver Jusufi loans. DUHANAJ could not pronounce or spell RANDY's last name, but thought it was something like Dzarzaski (phonetic). (I know from my investigation of this case that the Randy referred to by DUHANAJ is RANDY DZIERZAWSKI.) DUHANAJ advised that these two checks represented Goci and Jusufi's loan payments, which he collects on behalf of RANDY. According to DUHANAJ, since they could not spell RANDY's last name, they left the payee line blank. DUHANAJ stated that Goci and Jusufi's loans were approximately $25,000 to $30,000 each. DUHANAJ explained that Goci and Jusufi would provide DUHANAJ with the loan payments, he would then personally give them to RANDY, and the payments were always made by check. According to Bank of America records, however, a check dated June 3, 2011, made out by Enver Jusufi for $2,700 was deposited into the Bank of America account belonging to TOMO and PRENDE DUHANAJ. The check was made out to "Tom Duhanaj," not RANDY. Based on the "Outstanding Payments, Tom Duhanaj" sheet described above, this check would represent two months of payments for Jusufi's 45%+ extortionate extension of credit.

8. DUHANAJ was also asked if he assisted RANDY with any other loans. He (DUHANAJ) admitted that he did. DUHANAJ falsely stated that all of the loans are at an interest rate of 15% and RANDY provides everyone with 1099's (for interest). DUHANAJ also falsely stated that there are contracts for all of the loans, except for Goci and Jusufi, because their loans were a special case. (I know from my investigation that the extortionate extensions of credit - loan sharking - carried out by DUHANAJ that the loans are not documented, and for good reason. Were they documented, there would have been no need for the list of loans found in the DUHANAJ's possession by TPD. DUHANAJ explained that he personally guaranteed these loans based on their friendship with him. DUHANAJ also falsely stated that at the moment, DUHANAJ had four to five loans brokered through him that were financed by RANDY. Duhanaj explained

3

that Randy provides his loans through his company C&D Capital, which he owns.

9. According to an analysis by a FBI Forensic Accountant of the "Outstanding Payments, Tom Duhanaj" sheet described above, revealed that many of the loans detailed on the sheet appear not to be 15%, as stated by DUHANAJ, but in excess of 45%, to include the loans extended to Goci and Jusufi (referred to as Ala on the sheet). For example, the line for Goci on the sheet listed "John Goci, $30,000, 1,375.00, Beg. Oct 1, 2011 ending Sept 1, 2015." This was deciphered by our accountant to indicate that John Goci obtained a $30,000 loan with a payment of $1,375 per month, beginning in October 1, 2011 and ending on September 1, 2015. As previously stated, the accountant calculated the interest rate on this loan to be over 45%, not 15%. Also, the line for Jusufi listed "Ala, $30,000, 1,375.00, Beg. Nov 2010 ending Oct 28, 2014." This was deciphered to indicate Ala obtained a $30,000 loan with a payment of $1,375 per month, beginning in November 2010 and ending on October 28, 2014. The accountant also calculated the interest rate on this loan to be over 45%, not 15% as claimed by DUHANAJ. I know from my training and experience, and the training and experience of other FBI Special Agents with whom I have consulted, that interest rates in excess of 45% are typical of loan sharking operations. In fact, Congress has specifically recognized the 45% figure as being prima facie indicative of extortionate extensions of credit at 18 U.S.C. § 892(b)(2). The circumstances indicate that DUHANAJ lied about this interest rate to conceal the criminality of his loan sharking operation.

10. Additionally, DUHANAJ affirmatively, and falsely, claimed that RANDY provides everyone with IRS Form 1099's. However, on July 17, 2012, Jusufi and Goci were both interviewed separately by the FBI, and both stated that they had not received any 1099's.

11. DUHANAJ made further false statements to me and SA Arab when he stated that at the moment, he had four to five loans brokered through him that were financed by RANDY. Contrary to this claim, however, the FBI Forensic Accountant referenced above has determined from the "Outstanding Payments,

4

Tomo Duhanaj" sheet, that there are currently over 10 outstanding loans that were brokered through DUHANAJ and financed by RANDY.

Therefore, there is probable cause to believe that TOMO DUHANAJ has knowingly and willfully made materially false statements in a matter within the jurisdiction of the executive branch of the U.S. government, in violation of 18 U.S.C. § 1001(a)(2).

_____
Jeffrey Jacobs
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 3rd day of August, 2012

_____
Hon. Laurie J. Michelson
United States Magistrate Judge

5